UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

United States of America,

Case No. 14-cr-0298 (WMW/FLN)

Plaintiff,

**ORDER**

v.

Bryan S. Reichel,

Defendant.

---

This matter is before the Court on Defendant Bryan S. Reichel's pro se motion for a new trial, pursuant to Fed. R. Crim. P. 33(b), and pro se motion to vacate his convictions and sentence, pursuant to 28 U.S.C. § 2255. (Dkts. 266, 296.) Also pending are two dozen miscellaneous pro se motions filed by Reichel. (Dkts. 277, 286, 314, 318, 319, 323, 326, 328, 332, 334, 335, 337, 338, 339, 340, 341, 342, 343, 344, 346, 347, 349, 350, 351.) Plaintiff United States of America opposes Reichel's motions. For the reasons addressed below, Reichel's motions are denied.

## BACKGROUND

This case arises from Reichel's operation of PureChoice, Inc., a business that developed indoor air quality monitoring systems. As CEO of PureChoice, Reichel obtained bridge loans from private investors under false pretenses, failing to disclose to those investors that he had defaulted on multiple bank loans. Rather than using investors' money to fund PureChoice operations, Reichel used the money to pay off other loans and pay himself a large salary and bonuses. Reichel was forced out of PureChoice in 2010

after an employee discovered that he had been stealing money.  Reichel filed for bankruptcy under Chapter 7 in April 2011.  During the bankruptcy proceedings, Reichel failed to disclose hundreds of thousands of dollars in assets and financial transactions.

A grand jury indicted Reichel in 2014, and the United States filed a superseding indictment in 2015.  Following a month-long trial, a jury convicted Reichel in November 2016 of seven counts of wire fraud and four counts of bankruptcy fraud.  Reichel filed a motion to dismiss the superseding indictment the day before his sentencing hearing, arguing that the original indictment relied on false information presented to the grand jury and, therefore, did not toll the statute of limitations.  The Court denied Reichel's motion as untimely and sentenced Reichel to 264 months' imprisonment.  Reichel appealed, and the United States Court of Appeals for the Eighth Circuit affirmed Reichel's convictions and sentence in December 2018.  *United States v. Reichel*, 911 F.3d 910 (8th Cir. 2018).  Among other things, the Eighth Circuit concluded that sufficient evidence supported Reichel's conviction and that Reichel had not established good cause to excuse the untimely filing of his post-trial motion to dismiss the superseding indictment.  *Id.* at 916–17.

Reichel now moves for a new trial, pursuant to Fed. R. Crim. P. 33(b), and to vacate his convictions and sentence, pursuant to 28 U.S.C. § 2255.  In seeking a new trial, Reichel contends that he has discovered new, previously unavailable evidence that likely will result in an acquittal if he receives a new trial.  In his Section 2255 motion, Reichel argues that his defense counsel rendered ineffective assistance as to several aspects of his

case.  Also pending are nearly two dozen miscellaneous motions filed by Reichel in which he seeks, among other things, compelled discovery from the United States, copies of grand jury transcripts, evidentiary and status hearings, the appointment of counsel, and extensions of time to file briefs and supplemental materials in support of his motions.

Reichel also has repeatedly requested that the Court delay ruling on his postconviction motions to permit him additional time to challenge aspects of his bankruptcy case and, thereafter, supplement the record in this case with additional evidence of his purported innocence.  The United States Bankruptcy Court for the District of Minnesota denied Reichel's motion to reopen his bankruptcy case, the United States Bankruptcy Appellate Panel of the Eighth Circuit (BAP) dismissed Reichel's appeal of that decision in April 2021, and the Eighth Circuit affirmed the BAP's decision in December 2021.  *In re Reichel*, No. 21-2145, 2021 WL 5711092 (8th Cir. 2021).  As such, the Court finds no reason to further delay the resolution of Reichel's numerous postconviction motions in this case.

## ANALYSIS

### I.    Motion for a New Trial

Reichel first contends that he is entitled to a new trial because he has discovered new evidence that likely will result in an acquittal if he receives a new trial.

"Any motion for a new trial grounded on any reason other than newly discovered evidence must be filed within 14 days after the verdict or finding of guilty."  Fed. R. Crim. P. 33(b)(2).  Because Reichel filed his motion for a new trial three years after the

guilty verdicts, the motion is untimely to the extent that it is based on any issue other than newly discovered evidence.

To receive a new trial based on newly discovered evidence, a defendant must show that (1) the evidence was unknown or unavailable at the time of trial, (2) the defendant was duly diligent in attempting to uncover the evidence, (3) the newly discovered evidence is material, and (4) the newly discovered evidence likely will result in an acquittal after a new trial. *United States v. Meeks*, 742 F.3d 838, 840 (8th Cir. 2014). Newly discovered evidence is not material if it would serve only to impeach testimony presented at trial. *Id.* at 841. And a defendant "is not entitled to a new trial unless the evidence weighs heavily enough against the verdict that a miscarriage of justice may have occurred." *Id.* at 840 (internal quotation marks omitted). Reichel identifies seven categories of allegedly new evidence, which the Court addresses in turn.

### A. Regulatory Compliance Evidence

Reichel first argues that he has newly discovered evidence that the United States knowingly presented false information to the grand jury when obtaining the original indictment and later presented this false information at trial. Specifically, Reichel contends that the United States presented false testimony and argument about whether one of PureChoice's products complied with federal regulations.

Reichel has repeatedly advanced this argument to this Court and on direct appeal, and both this Court and the Eighth Circuit have rejected the argument. Reichel first attempted to dismiss the indictment on this basis on the eve of his sentencing, and this

Court rejected the motion as untimely.   In doing so, this Court observed that this information likely was available to Reichel long before trial.   And Reichel conceded that this information was available to him during trial.   The Eighth Circuit affirmed this Court's decision and also observed that the purportedly false information was immaterial to the grand jury proceedings.   *See Reichel*, 911 F.3d at 917 (observing that "we are confident that the grand jury could have indicted Reichel even without this inaccurate information").   Moreover, the trial testimony reflects that PureChoice had two versions of its primary product—one that passed regulatory testing but was not a viable product, and another that did not pass regulatory testing.   For these reasons, Reichel has not established that this evidence was unknown or unavailable to him at the time of trial, that he diligently attempted to find this evidence, that this evidence is material, or that this evidence likely would result in an acquittal after a new trial.

Accordingly, Reichel is not entitled to a new trial on this basis.

### B.   Financial Disclosure Supplement

Reichel next argues that he has a newly discovered exculpatory document that the United States withheld from him—namely, a PureChoice financial disclosure supplement, dated December 5, 2002, that includes warnings to potential investors.[1]

In his motion for a new trial, Reichel acknowledges that this document is one of PureChoice's files prepared at a time when Reichel was PureChoice's CEO.   Reichel also

---

[1]    The United States maintains that it did not have this document in its possession and, therefore, did not withhold it from Reichel.   Reichel presents no evidence demonstrating that the United States possessed this document.

acknowledges that this document was drafted by PureChoice and its law firm and that a copy of this document was in the possession of a PureChoice board member. Reichel presents no evidence or persuasive argument as to why this evidence was unknown or unavailable to him at the time of trial. Although Reichel suggests that the United States threatened or persuaded third parties to withhold this information from Reichel, he presents no evidence to support this speculative argument.

Even if Reichel could demonstrate that this evidence was unknown or unavailable to him at the time of trial despite diligent efforts to obtain it, he has not established that this evidence is material or likely would result in an acquittal after a new trial. Reichel does not present evidence that the December 5, 2002 supplement was provided to any of the investors who testified at trial or that those investors were aware of the information contained in the supplement.[2] To the contrary, the evidence at trial—including the testimony of investors and evidence that Reichel resisted advice to disclose information to investors—overwhelmingly established that Reichel withheld material information from investors and obtained investors' money based on false pretenses. As the Eighth Circuit observed when affirming Reichel's convictions, "a juror could have inferred that Reichel intended to deceive the investors from the evidence that Reichel convinced them to lend money to PureChoice, used some of that money for his own expenses, and failed to repay them according to the terms of the loan." *Reichel*, 911 F.3d at 916. The

---

[2]    Indeed, Reichel concedes in his motion that he "*believes* that *if* the files are checked" it will confirm that the disclosure was signed by recipient investors. (Emphasis added.) Thus, his contention that this evidence is exculpatory and "clearly exonerates" him is speculative.

December 5, 2002 supplement would not impact these inferences establishing Reichel's guilt.

Accordingly, Reichel is not entitled to a new trial on this basis.

### C.    Commencement of Investigation

Reichel next argues that he has newly discovered exculpatory evidence pertaining to the investigation of Reichel's conduct that the United States withheld from him.

Reichel's argument as to this purported evidence is difficult to comprehend.  He appears to suggest that one of his victims and his victim's attorney, who lied about his identity, conspired to provide false and misleading information to the United States in 2011.  According to Reichel, the United States's investigation of Reichel's conduct began based on this false and misleading information, and the investigation began earlier than the United States previously had suggested.  Reichel describes this evidence as follows:

> The newly discovered evidence is that after PureChoice closed it's [sic] doors on March 15, 2011, Atty TJ Conley went on to work as "counsel" for George and David Anderson (7th Rig) but, …under the covert and illegal act of pretending like he was still employed by PureChoice.

(Ellipses in original.)  And Reichel describes the relevance of this purported evidence as follows:

> Had the government produced this information it more than likely would have resulted in an innocent verdict or acquittal if there would have been any trial at all, as this is even more concrete evidence of the Andersons and their various attorneys knowingly manipulating the evidence and presenting false accusations to the prosecution.

Reichel does not provide details about that false or misleading information that purportedly was provided to the United States in 2011. Rather, he vaguely suggests that certain individuals misrepresented their identities and that an attorney representing one of Reichel's victims told the United States that some investors had "unresolved allegations against Reichel for unauthorized salary, bonuses and car allowance."

Assuming without deciding that this evidence was unknown or unavailable to Reichel at the time of trial despite diligent efforts to obtain it, he has not established that this evidence is material or likely would result in an acquittal after a new trial. Reichel has neither described nor presented evidence establishing the nature of any false or misleading information that was provided to the United States, let alone evidence that this purportedly false or misleading information was introduced at trial. Indeed, the exhibits on which Reichel relies for this argument include inculpatory evidence, not exculpatory evidence. And the date and manner in which the investigation of Reichel's conduct began have no apparent bearing on his guilt. At best, Reichel appears to suggest that this evidence of an alleged conspiracy involving Reichel's victims could be used to impeach the United States's witnesses in a new trial by suggesting that these witnesses lied or harbored bias or improper motives. But even if Reichel could demonstrate that such a conspiracy existed, which he has not done, newly discovered evidence is not material if it would serve only to impeach testimony presented at a new trial. *Meeks*, 742 F.3d at 841. As such, Reichel's argument lacks merit.

Accordingly, Reichel is not entitled to a new trial on this basis.

### D.     PureChoice Legal Files

Reichel next argues that newly discovered copies of approximately 2,800 PureChoice legal files will prove that he is innocent of wire fraud.  Reichel makes no effort to demonstrate why these documents were unknown or unavailable to him at the time of trial or that he diligently attempted to obtain them, other than to baselessly speculate that PureChoice's law firm "refused to cooperate with a request for documents from Reichel before, during and after trial for fear of retribution."  Even if Reichel could establish that these documents were unknown or unavailable to him at the time of trial, he makes little effort to explain what information these documents contain, let alone how this evidence is material or likely would result in an acquittal after a new trial.

Accordingly, Reichel is not entitled to a new trial on this basis.

### E.     Evidence from Bankruptcy Proceedings

Reichel next argues that he has newly discovered evidence that false claims were filed in his bankruptcy proceedings and that the bankruptcy trustee committed perjury.

Reichel presents no such evidence, however.  He merely speculates that the claims presented in his now-closed bankruptcy proceedings were "invalid" because they had "no legal basis."  This conclusory statement has no basis in the record.[3]  In addition, the exhibits on which Reichel relies largely consist of documents filed in Reichel's bankruptcy proceedings approximately ten years ago.  Reichel has not demonstrated that

---

[3]     Notably, the bankruptcy court rejected Reichel's attempt to reopen his bankruptcy case to challenge the allegedly invalid claims made against the bankruptcy estate, and that decision was affirmed on appeal.  *In re Reichel*, 2021 WL 5711092 at *1.

this evidence was unknown or unavailable to him at the time of trial or that he diligently sought to obtain this evidence.  Nor has he established that this evidence is material or likely to result in an acquittal, because even if third parties made invalid claims against Reichel's bankruptcy estate, this fact would have no bearing on whether Reichel is guilty of bankruptcy fraud.  For these reasons, Reichel's arguments challenging these aspects of his bankruptcy proceedings lack merit.

Accordingly, Reichel is not entitled to a new trial on this basis.

### F.   Statements by Reichel's Former Spouse

Reichel next argues that he has newly discovered evidence of written statements made by his former spouse during their 2019 divorce proceedings and during her 2017 bankruptcy proceedings.  According to Reichel, this evidence proves that his former spouse owned or controlled certain assets, thereby demonstrating that Reichel did not fraudulently conceal these assets during his bankruptcy proceedings.

Although the statements by Reichel's former spouse were written after Reichel's trial ended, these statements pertain to facts that predate Reichel's trial.  Reichel has not demonstrated how this information—namely, his then-spouse's ownership interest in certain assets—was unknown or unavailable to him at the time of trial.  Nor has he demonstrated why this information could not have been obtained with proper diligence before trial.  Nothing prevented Reichel from calling his spouse to testify at trial.

Even if Reichel could demonstrate that this information was unknown and unavailable to him at the time of trial, he has not established that this evidence likely

would result in an acquittal after a new trial. A defendant "is not entitled to a new trial unless the evidence weighs heavily enough against the verdict that a miscarriage of justice may have occurred." *Meeks*, 742 F.3d at 840. Reichel's purported new evidence does not clearly suggest that his spouse had sole ownership interest in the household goods identified at trial. Nor does Reichel's purported new evidence weigh heavily against the evidence at trial establishing that Reichel exercised sole control over the Reichel Investments, LP checking account that he failed to disclose during his bankruptcy proceedings.

Accordingly, Reichel is not entitled to a new trial on this basis.

### G. Farmrite Equipment Payment

Reichel next argues that he has newly discovered evidence that the bankruptcy trustee paid $25,000 to Farmright Equipment for the Bobcat 5600 Toolcat found at Reichel's home. According to Reichel, this evidence establishes that he did not own the Toolcat when he filed his bankruptcy petition in April 2011 and, therefore, did not fraudulently conceal this asset or the sale of this asset.

Both the bankruptcy trustee and Farmrite's owner testified at trial. These witnesses' testimony established that Reichel sold the Toolcat to Farmrite in December 2010 for $25,000, which was substantially less than its full value, and kept the money for himself. Reichel retained possession of the Toolcat thereafter, ostensibly to rent it, but he did not make any rent payments. Reichel did not disclose this information in his bankruptcy proceedings despite a legal obligation to do so. After the bankruptcy trustee

later found the Toolcat at Reichel's home, she sold it at auction for $45,000, remitted $25,000 of the sale proceeds to Farmrite, and retained the remainder for the bankruptcy estate. Reichel's purported "new" evidence about these transactions is consistent with the evidence presented at trial. As such, this evidence was not unknown or unavailable to Reichel at trial, nor would this evidence likely result in an acquittal after a new trial.

Accordingly, Reichel is not entitled to a new trial on this basis.

In summary, Reichel has not presented any grounds for a new trial based on his purported discovery of new evidence. Therefore, his motion for a new trial is denied.

## II.    Section 2255 Motion to Vacate

Reichel next moves to vacate his convictions and sentence pursuant to 28 U.S.C. § 2255, arguing that his defense counsel provided ineffective assistance as to several aspects of his case.

A federal prisoner may move to vacate a conviction or sentence "for jurisdictional and constitutional errors" or fundamental errors of law that inherently result in "a complete miscarriage of justice." *Sun Bear v. United States*, 644 F.3d 700, 704 (8th Cir. 2011) (internal quotation marks omitted). A pro se litigant's filings are liberally construed and held to less stringent standards than filings drafted by lawyers. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam). But it is the defendant's burden to establish that Section 2255 relief is warranted. *See Stone v. Harry*, 364 F.3d 912, 915 (8th Cir. 2004); *Cassidy v. United States*, 428 F.2d 585, 587 (8th Cir. 1970).

The Sixth Amendment to the United States Constitution provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the [a]ssistance of [c]ounsel for his defen[se]." U.S. Const. amend. VI. A criminal defendant is constitutionally entitled to the *effective* assistance of counsel. *Evitts v. Lucey*, 469 U.S. 387, 395 (1985). A claim of ineffective assistance of counsel may be brought in a collateral proceeding under Section 2255 even if the petitioner could have raised the claim on direct appeal. *Massaro v. United States*, 538 U.S. 500, 504 (2003); *see also United States v. Jones*, 121 F.3d 369, 370 (8th Cir. 1997) (observing that claims of ineffective assistance of counsel typically are not subject to procedural default).

To prevail on a claim of ineffective assistance of counsel, a defendant must show that (1) "counsel's representation fell below an objective standard of reasonableness" and (2) "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland v. Washington*, 466 U.S. 668, 688, 694 (1984). "Judicial scrutiny of counsel's performance must be highly deferential," and courts apply "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. Counsel's "strategic choices" executed after a thorough investigation of the relevant law and facts "are virtually unchallengeable." *Id.* at 690.

Reichel identifies more than a dozen grounds that purportedly demonstrate that he received ineffective assistance of counsel. The Court addresses each argument in turn.

### A.    Denial of Choice of Counsel

As a threshold argument, Reichel contends that the Court denied him his choice of counsel and suggests that he would have received adequate representation but for that denial.

Although an indigent defendant is "entitled to adequate representation," an indigent defendant "has no right to have the Government pay for his preferred representational choice." *Luis v. United States*, 578 U.S. 5, 12 (2016).  Here, the record reflects that Reichel retained private counsel in or about October 2014.  The Court granted retained counsel's motion to withdraw from representation for health reasons on August 24, 2015.  When doing so, the Court found that Reichel qualified for court-appointed counsel.  The Court subsequently appointed attorneys Peter Wold and Aaron Morrison to represent Reichel.  The record does not reflect that Reichel sought to retain private counsel or seek substitution of his appointed counsel thereafter.  For these reasons, Reichel's contention that the Court denied him his purported choice of counsel lacks legal and factual merit.[4]

Vacating Reichel's convictions and sentence is not warranted on this basis.

---

[4]    Reichel also argues that his appointed counsel attempted to pressure him to plead guilty and refused to follow the same strategy as his privately retained counsel.  But Reichel did not plead guilty.  And even if Reichel's appointed counsel pursued a strategy that differed from his privately retained counsel, this contention does not establish that Reichel received constitutionally deficient representation.  *See Strickland*, 466 U.S. at 690 (observing that counsel's "strategic choices" typically are "unchallengeable").  Reichel's arguments lack merit.

### B.    Failure to Investigate

Reichel next argues that defense counsel failed to conduct an adequate pretrial investigation.

Defense counsel must "make a reasonable investigation in the preparation of a case or make a reasonable decision not to conduct a particular investigation." *Kenley v. Armontrout*, 937 F.2d 1298, 1304 (8th Cir. 1991) (citing *Strickland*, 466 U.S. at 691).  As such, "counsel must exercise reasonable diligence to produce exculpatory evidence and strategy resulting from lack of diligence in preparation and investigation is not protected by the presumption in favor of counsel."  *Id.*  To establish that counsel provided ineffective assistance by failing to adequately investigate, however, a defendant typically must demonstrate that the evidence or witness would have provided useful information. *See Sanders v. Trickey*, 875 F.2d 205, 209–10 (8th Cir. 1989) (concluding that counsel's failure "to interview a witness she had little reason to believe would be useful or helpful" did not demonstrate ineffective assistance of counsel).  A defendant "need not show that he more likely than not would have been found innocent had his counsel performed adequately," but a defendant "must demonstrate at least a reasonable probability" that the outcome would have been different.  *Lawrence v. Armontrout*, 31 F.3d 662, 666 (8th Cir. 1994).  "In making this determination, a court hearing an ineffectiveness claim must consider the totality of the evidence before the judge or jury."  *Id.* (quoting *Strickland*, 466 U.S. at 695).

Reichel first argues that defense counsel failed to adequately investigate incorrect information that the United States presented to the grand jury when obtaining the original indictment.  But as this Court and the Eighth Circuit previously concluded, any incorrect information presented to the grand jury was immaterial to the grand jury proceedings. *See Reichel*, 911 F.3d at 917 (observing that "we are confident that the grand jury could have indicted Reichel even without this inaccurate information, and thus . . . dismissal of the original indictment would have been improper").  As such, Reichel has not established a reasonable probability that the outcome of this case would have been different had defense counsel done more to investigate this issue.

Reichel next argues that defense counsel failed to adequately investigate Count 8 of the superseding indictment, which alleged that Reichel committed bankruptcy fraud.  Specifically, Reichel argues that defense counsel should have investigated allegedly invalid claims made against his bankruptcy estate.  As addressed above in Part I.E. of this Order, Reichel has not plausibly demonstrated that any claims against the bankruptcy estate were invalid, and the bankruptcy court denied Reichel's motion to reopen the bankruptcy case to litigate this issue.  Even if Reichel could establish that invalid claims were made against the bankruptcy estate, he has not established that this evidence would have been probative of or relevant to any material issues.  Any invalid claims made against the bankruptcy estate would have no bearing on whether Reichel is guilty of bankruptcy fraud because the conduct of third-party creditors is irrelevant to the elements of Reichel's bankruptcy fraud offenses.  *See* Eighth Circuit Manual of Model Criminal

Jury Instructions Nos. 6.18.152A, 6.18.152B, 6.18.157 (2020) (describing elements of bankruptcy fraud).  As such, Reichel has not established a reasonable probability that the outcome of this case would have been different had defense counsel done more to investigate this issue.

Reichel also argues that defense counsel inadequately investigated whether his wire-fraud offenses had a sufficient interstate nexus.  This argument lacks merit.  The record includes Reichel's signed stipulations to the fact that his emails traveled through interstate commerce.  In addition, a bank employee testified at trial that Reichel's bank transactions were cleared through a bank facility in Kansas.  Reichel has not established a reasonable probability that the outcome of this case would have been different had defense counsel done more to investigate this issue.

Because Reichel has not identified any issue that defense counsel failed to reasonably investigate, vacating Reichel's convictions and sentence is not warranted on this basis.

### C.    Failure to File Pretrial Motions

Reichel next argues that defense counsel provided ineffective assistance by failing to file certain pretrial motions—namely, motions to dismiss the indictment and to exclude from evidence false testimony that Reichel was fired from PureChoice for stealing.

Both arguments lack merit.  For the reasons addressed in Part I.E. and Part II.B. of this Order, both this Court and the Eighth Circuit have rejected Reichel's argument that dismissal of the indictment would have been proper.  And a motion to exclude evidence

that Reichel was fired from PureChoice for stealing would have been denied, because such evidence is not false. *See Reichel*, 911 F.3d at 914 ("In 2010, Reichel was forced out of the company after an employee discovered that he had been stealing money."). Moreover, even if this evidence were false, its exclusion at trial would not have resulted in a different outcome in light of the overwhelming evidence of Reichel's guilt. Reichel was not prejudiced by the fact that defense counsel did not file pretrial motions that would have been futile.

Vacating Reichel's convictions and sentence is not warranted on this basis.

### D.   Failure to Obtain Grand Jury Transcripts

Reichel next argues that defense counsel provided ineffective assistance by failing to obtain copies of the grand jury transcripts. Reichel maintains that these transcripts could have been used to impeach the United States's witnesses at trial.

The United States "must disclose any evidence both 'favorable to an accused' and 'material either to guilt or to punishment.' " *United States v. Whitehill*, 532 F.3d 746, 753 (8th Cir. 2008) (quoting *Brady v. Maryland*, 373 U.S. 83, 87 (1963)). The United States also must "disclose matters that affect the credibility of prosecution witnesses." *United States v. Morton*, 412 F.3d 901, 906 (8th Cir. 2005) (citing *Giglio v. United States*, 405 U.S. 105, 153–55 (1972)). The Jencks Act, 18 U.S.C. § 3500(b), requires the United States to "disclose any statement of a witness in the possession of the United States which relates to the subject testified to by the witness on direct examination." *United States v. Dukes*, 758 F.3d 932, 938 (8th Cir. 2014) (internal quotation marks omitted).

The United States is not required to produce Jencks Act statements before a witness testifies on direct examination, but the United States may agree to early production of such statements. *See* 18 U.S.C. § 3500(b) (requiring production of Jencks Act statements "[a]fter a witness called by the United States has testified on direct examination"); *United States v. Douglas*, 964 F.2d 738, 741 n.2 (8th Cir. 1992).

The record reflects that Reichel's defense attorneys moved for early disclosure of Jencks Act materials. The Court denied that motion in an April 21, 2016 order, observing that the United States voluntarily agreed to make such disclosures in advance of trial.

Reichel contends that he could have used the grand jury transcripts to impeach the credibility of three witnesses: Postal Inspector Rob Strande, bankruptcy trustee Mary Jo Jensen-Carter, and Reichel's victim George Anderson. But neither Jensen-Carter nor Anderson testified before the grand jury. And although Strande testified before the grand jury, he did not testify at trial. As such, Reichel could not have used grand jury transcripts to impeach these witnesses at trial.

Reichel also argues that he could have used Strande's grand jury testimony to impeach the trial testimony of FBI Agent Brian Kinney. But the Jencks Act pertains to the use of a grand jury witness's testimony after that same witness has testified at trial. *See* 18 U.S.C. § 3500(a) (providing that no statement made by a government witness is discoverable "until *said witness* has testified on direct examination in the trial of the case" (emphasis added)); *accord Dukes*, 758 F.3d at 938. Reichel has not established that he was entitled to Strande's grand jury testimony for the purpose of impeaching a different

witness at trial.  *See United States v. Dwyer*, 647 F. Supp. 1440, 1442 (M.D. Pa. 1986) (rejecting argument that the prior "statements of one individual must be turned over as *Brady* material insofar as they may be used to impeach the credibility of another witness").  Moreover, Reichel does not even attempt to articulate how Strande's grand jury testimony could be used to impeach Agent Kinney's testimony, let alone how the outcome of his case would have been different had he been able to do so.

To the extent that Reichel argues that defense counsel should have obtained the grand jury transcripts for any other purpose, Reichel's argument lacks merit.  A court may authorize the disclosure of grand jury transcripts "at the request of a defendant who shows that a ground may exist to dismiss the indictment because of a matter that occurred before the grand jury."  Fed. R. Crim. P. 6(e)(3)(E)(ii).  A defendant must identify specific evidence of "prosecutorial overreaching" to establish a particularized need to consult grand jury transcripts.  *United States v. Lame*, 716 F.2d 515, 518 (8th Cir. 1983). Reichel has repeatedly requested copies of the grand jury transcripts, and both this Court and the Eighth Circuit have rejected those requests.  Notably, while his appeal was pending, Reichel filed a motion with the Eighth Circuit to obtain access to the grand jury transcripts.  Concluding that "Reichel has not shown 'that a ground may exist to dismiss the indictment because of a matter that occurred before the grand jury,' " the Eighth Circuit denied Reichel's motion.  *Reichel*, 911 F.3d at 917 n.3 (quoting Fed. R. Crim. P. 6(e)(3)(E)(ii)).  Reichel continues to repeat arguments that this Court and the Eighth Circuit have rejected, and he presents no persuasive evidence or

arguments establishing a particularized need for grand jury transcripts. As such, Reichel similarly has not established that defense counsel provided ineffective assistance by not obtaining grand jury transcripts.

Vacating Reichel's convictions and sentence is not warranted on this basis.

### E.   Failure to Cross Examine George Anderson Effectively

Reichel next argues that defense counsel provided ineffective assistance by failing to cross examine witness George Anderson effectively.

Courts "generally entrust cross-examination techniques, like other matters of trial strategy, to the professional discretion of counsel." *Ford v. United States*, 917 F.3d 1015, 1024 (8th Cir. 2019). The Eighth Circuit has found defense counsel's performance to be constitutionally deficient based on ineffective cross examination when "counsel allowed inadmissible devastating evidence before the jury or when counsel failed to cross-examine a witness who made grossly inconsistent prior statements." *Id.* at 1023. But a defendant must do more than offer vague speculation that a different line of questioning on cross-examination would have led to favorable testimony. *See Morelos v. United States*, 709 F.3d 1246, 1250 (8th Cir. 2013).

Here, Reichel has not demonstrated that his defense counsel's cross examination of Anderson was constitutionally deficient. Reichel has not identified any significant or material deficiency or error in defense counsel's extensive cross examination of Anderson, which spans more than 100 transcript pages and includes many of the topics that Reichel now argues should have been addressed. To the extent that Reichel

disagrees with defense counsel's strategic decisions as to Anderson's cross examination, such disagreement is not a basis for establishing ineffective assistance of counsel.

Accordingly, vacating Reichel's convictions and sentence is not warranted on this basis.

### F.    Failure to Call Favorable Witnesses

Reichel next argues that defense counsel provided ineffective assistance by failing to call several favorable defense witnesses.

Defense counsel's decision not to call a witness to testify is a "virtually unchallengeable trial strategy."  *United States v. Davidson*, 122 F.3d 531, 538 (8th Cir. 1997) (internal quotation marks omitted).  To establish ineffective assistance on this basis, a defendant "must demonstrate at least a reasonable probability" that the outcome of the trial would have been different if the witness had testified.  *Lawrence*, 31 F.3d at 666.  A defendant must offer more than "speculation that he was prejudiced" by defense counsel's failure to obtain a witness's trial testimony.  *Sanders*, 875 F.2d at 210 (rejecting defendant's argument that he was prejudiced by counsel's failure to investigate potential witness when defendant "offered nothing more than speculation that [the witness] might somehow have testified and provided . . . reasonable doubt").

Reichel vaguely contends that if the son of one of his victims had testified, "the jury would have heard all sorts of exculpatory testimony."  Reichel does not describe any specific probative or material exculpatory testimony that this witness would have provided, nor does Reichel identify a credible or persuasive basis on which to conclude

that this potential witness would have provided exculpatory testimony. To the contrary, the evidence at trial reflects that this individual provided *inculpatory* evidence of Reichel's crimes to the United States during the FBI's investigation.

Reichel next contends that defense counsel should have called PureChoice board member Richard Perkins to testify. At trial, the United States identified Perkins as Reichel's co-conspirator, and Reichel concedes that Perkins did not cooperate with defense counsel. Even if Perkins would have testified on Reichel's behalf, Reichel only vaguely describes the nature of Perkins's possible testimony, all of which is speculative with no evidentiary basis. Indeed, Reichel asserts that Perkins would testify that Reichel's victims were aware of PureChoice's debts when they agreed to invest, but Reichel does not explain how Perkins would have a basis to testify about the knowledge of other individuals. Moreover, such testimony would have been contrary to the substantial evidence presented at trial, including the testimony of Reichel's victims.

Reichel also argues that defense counsel should have called PureChoice's corporate attorney, who "would have testified that all the required legal and financial disclosures were in fact made to ALL prospective lenders or investors." Reichel similarly contends that the president of a private equity firm would have testified that PureChoice's investors received all necessary disclosures. Again, Reichel provides no evidentiary basis for either contention, but merely speculates about what the testimony of these individuals might have been. Moreover, such testimony would have been contrary

to the substantial evidence presented at trial, including the testimony of Reichel's victims and evidence that Reichel resisted advice to disclose information to investors.

Reichel contends that defense counsel should have called an auditing firm employee to testify that PureChoice was a legitimate business and not a Ponzi scheme. Reichel fails to identify a particular individual who would provide this testimony, nor does he provide any evidentiary basis. He merely speculates that a hypothetical individual would provide such testimony.

Finally, Reichel argues that defense counsel should have called PureChoice's director of sales as well as a lobbyist who worked closely with Reichel and PureChoice. According to Reichel, these individuals would have offered favorable testimony about PureChoice's products and business model. Again, Reichel provides no evidentiary basis for this contention. He merely speculates about what the testimony of these individuals might have been. Moreover, Reichel fails to demonstrate how this testimony would result in a different outcome. Favorable testimony about PureChoice's products and business model would do little, if anything, to negate the substantial evidence of guilt at trial, which demonstrated that Reichel obtained loans from private investors under false pretenses and used investors' money improperly.

In summary, Reichel has not established that defense counsel failed to call any witness whose testimony likely would have changed the outcome of the trial. Accordingly, vacating Reichel's convictions and sentence is not warranted on this basis.

### G.    Failure to Request Continuance of Trial

Reichel contends that he received ineffective assistance because one of his two attorneys appeared to have symptoms of illness during trial but did not seek a trial continuance.  Reichel provides no evidentiary basis establishing that his attorney was ill during the trial.  And even if this contention were supported, Reichel has not established that he received objectively unreasonable representation or suffered any prejudice because of his attorney's purported illness.  Vacating Reichel's convictions and sentence, therefore, is not warranted on this basis.

### H.    Failure to Object to Jury Instructions

Reichel argues that defense counsel provided ineffective assistance by failing to object to jury instructions.  Reichel does not identify any specific jury instruction that should have been challenged, nor does he explain any basis for such an objection.  Accordingly, vacating Reichel's convictions and sentence is not warranted on this basis.

### I.    Failure to Object During Voir Dire

Reichel contends that defense counsel provided ineffective assistance by failing to object during voir dire.  Because Reichel does not identify which jurors were improperly selected, how their selection was improper, or what objections should have been made, vacating Reichel's convictions and sentence is not warranted on this basis.

### J.    Failure to Object to Opening Statements and Closing Arguments

Reichel argues that defense counsel provided ineffective assistance by failing to object during opening statements and closing arguments.  But Reichel has not identified

an objectively reasonable basis on which defense counsel should have objected to the United States's opening statement or closing argument.  Nor has he established that he was prejudiced by this purported failure.  Vacating Reichel's convictions and sentence, therefore, is not warranted on this basis.

### K.    Failure to Challenge Alleged Bankruptcy Conspiracy

Reichel advances several arguments suggesting that the prosecutors, the bankruptcy trustee, and Reichel's investor victims conspired to present false and fraudulent evidence in both the bankruptcy proceedings and at Reichel's criminal trial. Reichel appears to contend that the United States committed prosecutorial misconduct by participating in this conspiracy and that defense counsel provided ineffective assistance by failing to expose and challenge this conspiracy and false evidence.

As addressed above in Part I.E. and Part II.B. of this Order, these arguments lack both legal and factual merit.  The bankruptcy court rejected these or similar arguments when it denied Reichel's motion to reopen his bankruptcy case, and that decision was affirmed on appeal.  Reichel has identified no legal authority that would permit him to collaterally attack aspects of his closed bankruptcy proceedings in this case.  In addition, Reichel has not demonstrated, with evidence or plausible arguments, that any purported conspiracy or false evidence exists as to his bankruptcy proceedings.

Reichel also has not established that any of his conspiracy theories as to the bankruptcy proceedings, even if true, would have any relevance to the outcome of his criminal trial.  Indeed, Reichel's speculation that the bankruptcy court was defrauded by

others does not call into question the overwhelming evidence at trial establishing that Reichel committed bankruptcy fraud.  As the Eighth Circuit observed when affirming Reichel's conviction, "a juror could have inferred fraudulent intent concerning the bankruptcy from the evidence that Reichel filed for bankruptcy just before a creditor planned to file his summary judgment motion, then transferred funds to a hidden account, and finally failed to disclose that account and other items to the trustee."  *Reichel*, 911 F.3d at 916.  The validity of claims made against the bankruptcy estate have no bearing on Reichel's guilt.

Vacating Reichel's convictions and sentence is not warranted on this basis.

### L.    Failure to Object to Video and Photographic Evidence

Reichel argues that defense counsel provided ineffective assistance by failing to object to video and photographic evidence depicting assets that Reichel did not disclose in his bankruptcy proceedings.  Reichel asserts that these exhibits are unfairly prejudicial because they depict assets that did not belong to him but instead belonged to his spouse, daughter, and a limited partnership.

Reichel presented this argument at trial, and the jury rejected it.  Moreover, Reichel does not present any evidence establishing that the video and photographic evidence that he now challenges would have been excluded as unfairly prejudicial had it been objected to at trial.  *See* Fed. R. Evid. 403 (providing that relevant evidence may be excluded if "its probative value is substantially outweighed by a danger of . . . unfair

prejudice"). For these reasons, Reichel has not established that defense counsel acted unreasonably, or that Reichel suffered prejudice, with respect to this evidence.

Accordingly, vacating Reichel's convictions and sentence on this basis also is not warranted.

### M.     Failure to Contest Ownership of ToolCat

Reichel argues that defense counsel provided ineffective assistance by failing to contest Reichel's ownership of the ToolCat. Reichel's argument misrepresents the trial record.

As addressed in Part I.G. of this Order, the evidence at trial established that Reichel sold the Toolcat in December 2010 for $25,000 and personally kept the proceeds. Thereafter he retained possession of the Toolcat, ostensibly to rent it, but he did not make any rent payments. Reichel did not disclose any of this information in his bankruptcy proceedings despite having a legal obligation to do so. As such, Reichel has not established that defense counsel acted unreasonably, or that Reichel suffered any unfair prejudice, with respect to this evidence.

Vacating Reichel's convictions and sentence, therefore, is not warranted on this basis.

### N.     Prosecutorial Misconduct

Reichel also argues that the United States committed prosecutorial misconduct in several ways. In particular, Reichel contends that the United States withheld exculpatory evidence from him, including a letter from a victim's attorney, and that the United States

introduced false evidence against Reichel and threatened potential witnesses to prevent them from testifying on Reichel's behalf.  None of these arguments has merit.  The letter that Reichel references was not withheld from Reichel.  Indeed, this letter was admitted as a defense exhibit at trial.  And Reichel has not identified any other exculpatory evidence that the United States withheld from him.  As addressed throughout this Order, the evidence that the United States allegedly withheld either was not in the possession of the United States, lacks relevance, lacks exculpatory or other probative value as to a material issue, or is based on speculation and does not appear to exist.  In addition, Reichel presents no basis to support his mere speculation that the United States either introduced false evidence at trial or threatened potential witnesses to prevent them from testifying on Reichel's behalf.

Vacating Reichel's convictions and sentence is not warranted on this basis.

In summary, Reichel has not demonstrated that he received ineffective assistance of counsel, nor has he identified any other basis to vacate his convictions and sentence. Indeed, many of Reichel's arguments are so baseless that they may be deemed frivolous. *See Denton v. Hernandez*, 504 U.S. 25, 33 (1992) (observing that arguments are frivolous if they are "fanciful," "fantastic," or "delusional," or if they "rise to the level of the irrational or the wholly incredible").  Because Reichel's arguments lack any legal or evidentiary merit, are contrary to the record in this case, have previously been rejected by this Court or the Eighth Circuit, or are otherwise frivolous, Reichel's motion to vacate his convictions and sentence is denied.

### III.     Certificate of Appealability

When a final order is issued in a Section 2255 proceeding, a "certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  For the reasons addressed above, the Court concludes that Reichel has not made a substantial showing of the denial of a constitutional right.  Accordingly, no certificate of appealability shall issue as to Reichel's Section 2255 motion.

### IV.     Miscellaneous Motions

Also pending before the Court are two dozen miscellaneous pro se motions filed by Reichel.  The Court briefly addresses these motions below.

#### A.     Motions for Discovery

Reichel has filed multiple motions that, collectively, may be categorized as motions seeking compelled discovery or access to transcripts or other documents. Reichel seeks the compelled production of evidence from the United States and the bankruptcy trustee, copies of grand jury and pretrial transcripts from the Court, and an order compelling the bankruptcy court to reopen and investigate his bankruptcy case.

A defendant seeking a new trial under Rule 33(b), Fed. R. Crim. P., must have newly discovered material evidence *before* filing a motion for a new trial.  Reichel identifies no legal authority entitling him to court-ordered postconviction discovery so that he can search for evidence to support a motion for a new trial.  Similarly, when a defendant seeks to vacate a conviction or sentence under 28 U.S.C. § 2255, a district

court "may, *for good cause*, authorize a party to conduct discovery."  Rule 6(a), Rules Governing Section 2255 Proceedings for the United States District Courts (emphasis added).  For the reasons addressed throughout this Order, Reichel's motions for a new trial and to vacate his convictions and sentence have no legal or factual merit.  And Reichel has provided no legal or factual basis establishing good cause or otherwise entitling him to discovery or the reopening of his bankruptcy case.

Reichel's motions for discovery, therefore, are denied.

### B.    Motions for a Hearing

Reichel also has filed multiple motions seeking an evidentiary or status hearing.

"Absent exceptional circumstances, a motion for a new trial based on newly discovered evidence may be decided on affidavits without a hearing."  *United States v. Baker*, 479 F.3d 574, 579 (8th Cir. 2007) (internal quotation marks omitted).  The necessity to conduct a hearing is even lower when the judge considering the postconviction motion for a new trial also presided at the trial and had the opportunity to observe and evaluate the evidence.  *United States v. Rojas*, 520 F.3d 876, 884 (8th Cir. 2008).  With respect to a Section 2255 motion, a district court may hold an evidentiary hearing to resolve disputed material facts.  *See* 28 U.S.C. § 2255(b).  But an evidentiary hearing is not required if "(1) the petitioner's allegations, accepted as true, would not entitle the petitioner to relief, or (2) the allegations cannot be accepted as true because they are contradicted by the record, inherently incredible, or conclusions rather than statements of fact."  *Sanders v. United States*, 341 F.3d 720, 722 (8th Cir. 2003).

Here, for the reasons addressed throughout this Order, Reichel's motions for a new trial and to vacate his convictions and sentence have no legal or factual merit.   His allegations are contradicted by the record, are inherently incredible and would not entitle Reichel to relief even if accepted as true.   An evidentiary hearing, therefore, is not warranted.

Reichel's motions for a hearing are denied.

### C.   Motion for Appointment of Counsel

Reichel also requests court-appointed counsel to assist him with his postconviction motions.

Reichel's "right to appointed counsel extends to [his] first appeal of right, and no further." *Pennsylvania v. Finley*, 481 U.S. 551, 555 (1987).   And "a post-conviction, *post*-appeal Rule 33 motion [for a new trial] is considered a collateral challenge to which the Sixth Amendment right to counsel does not attach." *United States v. Berger*, 375 F.3d 1223, 1226 (11th Cir. 2004) (collecting cases); *accord United States v. McElrath*, No. 03-235, 2010 WL 5173603, at *2 (D. Minn. Dec. 14, 2010) (denying motions for an evidentiary hearing and appointment of counsel with respect to defendant's post-conviction, post-appeal Rule 33 motions for a new trial); *see also Finley*, 481 U.S. at 555 (observing that prisoners do not have a constitutional right to counsel when collaterally challenging a conviction).   With respect to Reichel's Section 2255 motion, a district court must appoint counsel for a defendant who qualifies for the appointment of counsel *if* an

evidentiary hearing is necessary to determine the merits of the Section 2255 motion. *Green v. United States*, 262 F.3d 715, 716 (8th Cir. 2001).

For the reasons addressed throughout this Order, Reichel's motions for a new trial and to vacate his convictions and sentence have no legal or factual merit and do not warrant an evidentiary hearing. As such, Reichel is not entitled to the appointment of counsel.

Reichel's motion for court-appointed counsel, therefore, is denied.

### D.   Motions to Supplement the Record

Reichel repeatedly has moved to supplement the record with additional evidence and briefing. To the extent that Reichel has filed supplemental materials, the Court has considered those materials and concludes that they lack merit for the reasons addressed throughout this Order. To the extent that Reichel seeks to file additional supplemental materials, he has not shown good cause to do so. For these reasons, his motions to supplement the record are granted in part and denied in part.

### E.   Motions to Delay or Accelerate Ruling on Postconviction Motions

Reichel has, on multiple occasions, asked the Court to either delay or accelerate ruling on his postconviction motions. Similarly, in numerous motions Reichel has asked the Court to order a mistrial, declare him innocent, release him from prison pending a ruling on his postconviction motions, and order the United States to show cause as to why Reichel's postconviction motions should not be granted. In light of this Order, these motions are denied as moot.

# ORDER

Based on the foregoing analysis and all the files, records and proceedings herein,

**IT IS HEREBY ORDERED**:

1.      Defendant Bryan S. Reichel's motion for a new trial, (Dkt. 266), is **DENIED**.

2.      Defendant Bryan S. Reichel's motion to vacate his convictions and sentence pursuant to 28 U.S.C. § 2255, (Dkt. 296), is **DENIED**.

3.      No certificate of appealability shall issue pursuant to 28 U.S.C. § 2253(c)(2).

4.      Defendant Bryan S. Reichel's motions to supplement the record, (Dkts. 286, 318, 328, 342, 344, 346, 349, 350, 351), are **GRANTED IN PART AND DENIED IN PART** as addressed in Part IV.D. of this Order.

5.      Defendant Bryan S. Reichel's miscellaneous pro se motions, (Dkts. 277, 314, 319, 323, 326, 332, 334, 335, 337, 338, 339, 340, 341, 343, 347), are **DENIED** as addressed in Part IV of this Order.

LET JUDGMENT BE ENTERED ACCORDINGLY.


Dated:  May 20, 2022                                    s/Wilhelmina M. Wright
                                                        Wilhelmina M. Wright
                                                        United States District Judge